UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:10-cv-1815-Orl-19GJK

SUNGARD PUBLIC SECTOR INC.,

    Plaintiff,

v.

INNOPRISE SOFTWARE, INC., N. HARRIS
COMPUTER CORPORATION, HARRIS
SYSTEMS USA INC., HARWARD
INVESTMENTS, INC., CRUSADER
INVESTMENTS LLC, DENNIS HARWARD,
and JOHN CONNORS,

    Defendants.
_____/

**PLAINTIFF SUNGARD PUBLIC SECTOR INC.'S OPPOSITION
TO DEFENDANT CRUSADER INVESTMENTS LLC'S
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Plaintiff SunGard Public Sector Inc. ("Plaintiff" or "SunGard P.S.") submits the following Opposition to Defendant Crusader Investments LLC's ("Crusader Investments") Motion to Dismiss the Second Amended Complaint (ECF No. 68) ("Motion to Dismiss").

**I.    Introduction**

Crusader Investments LLC ("Crusader Investments") is incorporated under the laws of the State of Florida and is an investment company managed by Defendant John Connors. *See* Compl. ¶¶ 10, 12. SunGard P.S. commenced this action in December 2010 by filing its initial Complaint against Innoprise for tortious interference with contractual relationships. As the basis for this claim, SunGard P.S. alleged that Innoprise induced SunGard P.S.'s

customers to breach their license agreements with SunGard P.S. concerning SunGard P.S.'s proprietary NaviLine software, by allowing Innoprise unauthorized access to the software. The Complaint also included claims for tortious interference with business relationships, and for violations of the Florida Deceptive and Unfair Trade Practices Act and the Lanham Act, arising from false and deceptive solicitations by Innoprise, which sought to, and did, divert SunGard P.S.'s customers. *See* Compl. (ECF No. 1), Counts I-IV. Innoprise answered the Complaint and attempted to plead affirmative defenses. *See* Answer, Affirmative Defenses (ECF No. 18).

SunGard P.S. sought to immediately develop the factual record and moved the Court for an order allowing expedited third–party discovery, which was granted. SunGard P.S. then proceeded to issue some thirty-three subpoenas *duces tecum* to be served upon former SunGard P.S. customers who were solicited by, and diverted to, Innoprise. The subpoenas requested the production of documents and other things related to Innoprise's solicitation of SunGard P.S.'s customers and Innoprise's provision of support and maintenance services to SunGard P.S.'s customers for SunGard P.S.'s proprietary NaviLine software.

Through this discovery, SunGard P.S. obtained evidence that Innoprise violated SunGard P.S.'s rights in the copyrighted NaviLine software by, without SunGard P.S.'s consent, copying and altering the source code associated with the software licensed to SunGard P.S.'s customers. Based on this evidence, SunGard P.S. was given leave by the Court to amend its pleading to include a claim for copyright infringement. *See* Consent Mot. for Leave to File Am. Compl. (ECF No. 32).

DB1/ 68067124.1

SunGard P.S.'s Amended Complaint (ECF No. 36) was filed of record on April 15. Innoprise again answered the complaint and also filed counterclaims against SunGard P.S. for tortious interference and defamation. *See* Answer and Affirmative Defenses (ECF No. 37). The Court dismissed these counterclaims for failure to state a claim. *See* Order (ECF No. 46).

The Amended Complaint was filed ten days before the Court's April 25, 2011 deadline for either party to move for leave to add parties or amend a pleading. Then, just four days after this deadline lapsed, SunGard P.S. learned that Innoprise was acquired (the "Innoprise Acquisition") by Harris. Innoprise never disclosed the Acquisition. SunGard P.S. learned of it through the press and thereafter received no response from Innoprise to its requests for information, before moving to enlarge the deadline for adding parties in order to allow time for SunGard P.S. to investigate and amend its pleading, as warranted by the facts. To that end, SunGard P.S. issued a subpoena *duces tecum* to Harris on May 27. On June 17, the Court granted SunGard P.S.'s motion and ordered that SunGard P.S. had ten days, until June 27, to file an amended complaint. *See* Order (ECF No. 45).

Per the Court's Order, SunGard P.S. filed its Second Amended Complaint (ECF No. 47) (the "Complaint") on June 27, adding Harward Investments, Inc., Dennis Harward, N. Harris Computer Corporation, Harris Systems USA, Inc., Crusader Investments and John Connors as Defendants, and adding claims for violation of the Uniform Fraudulent Transfer Act ("UFTA") and civil conspiracy.[1]

---

[1] SunGard P.S. filed the Complaint, having received approximately 500 pages of documents produced by Harris in response to SunGard P.S.'s subpoena. Some combined 4,200 additional pages were produced on June 27 and 29—too late to be incorporated into

## II. Legal Discussion

### A. Legal Standards

In deciding a motion to dismiss, the court's analysis is generally limited to the four corners of the complaint. *See Bujak v. Nat'l City Mortg.*, 2009 WL 179533, at *1 (M.D. Fla. Jan. 23, 2009). Documents outside the four corners also may be considered, if "central to or referenced in the complaint." *Crenshaw v. Lister*, 509 F. Supp. 2d 1230, 1233 (M.D. Fla. 2007). The court must "accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff." *S.E.C. v. Wall Street Commc'ns, Inc.*, 2009 WL 2579310, at *1 (M.D. Fla. Aug. 19, 2009).

To survive a motion to dismiss, a plaintiff is required to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A pleading is sufficient if the allegations, when taken as true, "give the defendant fair notice" and are not merely "speculative." *Id.* at 555, 570.

### B. The Complaint states a claim against Crusader Investments under the Uniform Fraudulent Transfer Act

Florida's Uniform Fraudulent Transfer Act ("UFTA") was promulgated to prevent a debtor from transferring assets out of the reach of its creditors, and provides that a transfer made with "actual intent to hinder, delay or defraud" any present or future creditor is a fraudulent transfer. Fla. Stat. § 726.105(1)(a); *see Ohio Farmers Ins. Co. v. Nestal*, 2011 WL

---

SunGard P.S.'s pleading. Harris's later productions included documents that provide significant additional details of the Innoprise Acquisition and further evidence to substantiate SunGard P.S.'s claims. Such information and evidence can of course be used by SunGard P.S. to supplement its pleading, if need be.

2532394, at *8 (M.D. Fla. June 1, 2011).[2] To state a claim under the UFTA, a plaintiff must "allege (1) there was a creditor sought to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been available to satisfy the debt." *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002); *see Dillon v. Axxsys Int'l, Inc.*, 185 Fed. App'x 823, 828-29 (11th Cir. 2006).

The facts alleged in the Complaint are more than sufficient to establish each of these requisite elements and state a claim against Crusader Investments under the UFTA, as a party to and transferee under the Asset Purchase Agreement ("APA") entered into by and among the Defendants in this action[3] by which Innoprise's assets were sold to Harris and the proceeds of the sale were disbursed to Crusader Investments.[4] As alleged, (1) SunGard P.S.

---

[2] It is "premature to undertake a choice of law analysis," in deciding a motion to dismiss, and none is required, with respect to SunGard P.S.'s claim against Crusader Investments under the UFTA, as there is no true conflict among the UFTA statutes adopted by the jurisdictions with an interest in this case. *Steinberg v. Alpha Fifth Group*, 2010 WL 1332844, at *2 (S.D. Fla. Mar. 30 2010) ("At this stage of the litigation, [ruling on a motion to dismiss an UFTA claim], it is premature to undertake a choice of law analysis."); *see W.R. Grace & Co. v. Sealed Air Corp.*, 281 B.R. 852, 855 (D. Del. 2002) ("Because there is no true conflict of laws, the Court will rely on the UFTA and treat as persuasive authorities from each of the UFTA jurisdictions."). Crusader Investments assumes Florida's UFTA applies. *See* Motion to Dismiss, 4-6.

[3] Crusader Investments was a "Bridge Holder," as defined in the APA, and as such, it is plain on the face of the APA, that Crusader Investments was a party to the APA. *See* APA (ECF No. 54-1) at 1, 2 (defining "Bridge Holder" as Harward Investments, Crusader Investments and John Connors). John Connors, the Manager of Crusader Investments, executed the APA on behalf of Crusader Investments. *See id.*, 51.

[4] *See Nastro v. D'Onofrio*, 263 F. Supp. 2d 446, 450 (D.Conn. 2003) ("In an action to set aside a fraudulent conveyance, the transferee of the assets at issue is a necessary party to the lawsuit"); *see also Martinez v. Balbin*, 76 So. 2d 488, 490 (Fla. 1954) (finding the recipient of a fraudulent transfer is an indispensable party when the recipient is charged with participation in the fraud).

DB1/ 68067124.1

was a "creditor" under the UFTA;[5] (2) Innoprise was, and is, "a debtor intending fraud;"[6] and (3) Innoprise conveyed *all* of its assets to Harris, "which could have been available to satisfy the debt."[7]

Crusader Investments argues that "Plaintiff fails to adequately allege that Innoprise— as the seller— or Crusader Investments had the requisite intent necessary to establish a claim." Motion to Dismiss, 4. This position is premised on assertions that "[o]f the 'badges of fraud' identified [in UFTA § 726.105(2)], Plaintiff fails to, as it must, adequately allege at least five," and that the allegations in the Complaint "misrepresent the agreement's plain terms." *Id.*, 4, 5.

Crusader Investments misstates the law. Under the terms of the UFTA, the badges of fraud identified in the statute are "factors" to which "consideration *may* be given, among other[s]," in determining actual intent.[8] A creditor under the UFTA need not allege *all* of the

---

[5] Compl. ¶ 107 ("By filing this action, SunGard P.S. gained the status of a creditor under the Uniform Fraudulent Transfer Act."); *see* Fla. Stat. § 726.102(4) ("'Creditor' means a person who has a claim."); Fla. Stat. § 726.102(3) ("'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.).

[6] *See, e.g.*, Compl. ¶ 98 ("The acquisition was designed to hinder, delay or defraud SunGard P.S., a statutory creditor, in pursuit of its claims against Innoprise.").

[7] *See id.* ¶¶ 100, 101, 103, 105, 108.

[8] Fla. Stat. § 726.105(2) ("To determine actual intent under the UFTA, consideration may be given, among other factors, to whether: (a) The transfer or obligation was to an insider; (b) The debtor retained possession or control of the property transferred after the transfer; (c) The transfer or obligation was disclosed or concealed; (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) The transfer was of substantially all the debtor's assets; (f) The debtor absconded; (g) The debtor removed or concealed assets; (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) The transfer occurred shortly before or shortly after a

DB1/ 68067124.1

badges of fraud enumerated in the UFTA, as Crusader Investments implies. Motion to Dismiss, 4-5. Indeed, the badges of fraud need not even be considered where, as here, an intent to defraud is evidenced by the *effect* of the transaction. *See In re Total Acquisition Corp.*, 29 B.R. 836, 840 (Bankr. S.D. Fla. 1983) (citing *Stelle v. Dennis*, 140 So. 194 (Fla. 1932) (intent may be "evidenced by the transaction or the effect of the transaction")). "When the legal effect of a conveyance is to hinder or delay creditors, the intent [to defraud] will be presumed, regardless of the actual motives of the parties." *J.I. Kelley Co. v. Pollock & Bernheimer*, 57 Fla. 459, 464 (Fla. 1909); *In re Tai*, 1996 WL 529411, at *4 (Bankr. M.D. Fla. Aug. 9, 1996) ("Intent will be presumed regardless of the motives of the parties when the legal effect of a conveyance is to hinder creditors.").[9]

As alleged in the Complaint, the proceeds from the sale of Innoprise's assets were not, and will not be, disbursed to Innoprise.[10] "In fact," as Defendant Harris admits in its Motion to Dismiss, "prior to closing, the 'Seller' (Innoprise) instructed Harris to remit the purchase price to Defendants Crusader Investments LLC and Harward Investments, Inc."

---

substantial debt was incurred; and (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.").

[9] In passing the UFTA, the Florida legislature incorporated the legal and equitable principles of prior fraudulent conveyance law. *See Advest, Inc. v. Radar*, 743 F. Supp. 851, 853-54 (S.D. Fla. 1990). Therefore, courts may look to cases decided prior to enactment of the UFTA in applying and interpreting the UFTA. *See Gen. Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1500 (11th Cir. 1997).

[10] *See* Compl. ¶ 103 ("Defendants agreed that the proceeds from the sale are to be disbursed . . . among parties other than Innoprise, leaving Innoprise without sufficient funds to satisfy a judgment against it."); *id.* ¶ 105 ("[T]he Defendants agreed that . . . the proceeds from the sale are to be disbursed, under the holdback provisions, directly to Harward Investments, Inc. and Crusader Investments, leaving Innoprise unable to satisfy the judgment."); *id.* ¶ 108 ("Defendants . . . agreed to structure the acquisition such that Innoprise would be rendered judgment proof, and to leave SunGard P.S., a statutory creditor, without remedy or recourse.").

Mot. to Dismiss Second Am. Compl. (ECF No. 54) at 12, n.5. The legal effect of the transaction, therefore, was to render Innoprise "judgment proof." Compl. ¶ 108. As intended, Innoprise "will remain effectively as a shell," unable to "satisfy any judgment obtained by SunGard." Exhibit A, E-mail correspondence dated April 26, 2011, by and among attorney Derek S. Keay, Billy Buchanan and Harris President and Chief Executive Officer Jeff Bender ("Question: what assets will Innoprise have left to satisfy any judgment obtained by SunGard if SunGard is successful? . . . Although this is an asset sale it does take away the business that Innoprise operate[s] and so the company will have very few assets and will remain effectively as a shell.").[11]

The effect of the transfer was "to hinder, delay or defraud SunGard P.S., a statutory creditor, in pursuit of its claims against Innoprise." Compl. ¶ 97. And thus, Innoprise's intent to defraud, under Florida law, is presumed. *See J.I. Kelley Co.*, 57 Fla. at 464; *In re Tai*, 1996 WL 529411, at *4. Crusader Investments' Motion makes no attempt to address the alleged *effect* of the transfer, which is alone sufficient to establish the intent necessary to state a claim under the UFTA. *See In re Total Acquisition Corp.*, 29 B.R. at 841 (quoting *Stelle*, 140 So. at 195) ("It is not necessary to demonstrate the actual intent of the transferor to defraud its creditors to prove the existence of a fraudulent conveyance. Evidence of an act or series of acts with the effect of defrauding creditors of the transferor is sufficient.").

---

[11] The document attached as Exhibit A was one of the more than 4,000 produced by Harris too late to be incorporated into the pleading. The document is "central" to SunGard P.S.'s claim, however, and "[p]resumably," therefore, "may be considered by the [C]ourt in ruling on [the Motion to Dismiss]." *Chandler v. Kopelousos*, Case No. 8:11-cv-00262-RAL-EAJ, Order (ECF No. 38) (M.D. Fla. May 10, 2011) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

The debtor's fraudulent intent can also be, and is here, demonstrated through the "badges of fraud." Because proof of actual intent "can rarely be accomplished by direct evidence," courts may "infer fraudulent conduct from the circumstantial evidence and the surrounding circumstances of the transactions." *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998). "[C]ourts generally consider the totality of the circumstances and determine whether any 'badges of fraud' are present in connection with a particular transfer." *In re Ramsurat*, 361 B.R. 246, 253 (Bankr. M.D. Fla. 2006).

The presence of but one badge of fraud has been held to justify a finding of actual fraudulent intent, and the presence of several badges of fraud is considered conclusive. *See In re Tai*, 1996 WL 529411, at *4 ("The presence of several badges of fraud gives rise to a rebuttable inference of fraud."); *In re Ingersoll*, 124 B.R. 116 (Bankr. M.D. Fla. 1991) ("The presence of several of these factors leads inescapably to the conclusion that the Debtor possessed the necessary fraudulent intent. However, even the presence of only one of these factors has been held to justify a finding of actual fraudulent intent."). In this case, *no less than five badges of fraud* are alleged in the Complaint, from which the Court can readily "infer fraudulent conduct." *In re XYZ Options, Inc.*, 154 F.3d at 1271. Crusader Investments makes no attempt in its Motion to explain how any of these allegations "misrepresent the agreement's plain terms." Motion to Dismiss, 5.

It is a badge of fraud where, as here, the alleged "transfer was of substantially all the debtor's assets." Fla. Stat. § 726.105(2)(e).[12] It is also a badge of fraud where, as here, "the debtor had been sued or threatened with suit" before the transfer was made. Fla. Stat. §

---

[12]   *See* Compl. ¶¶ 100, 101, 103, 105, 108.

726.105(2)(d); *see Jennings v. Maxfield*, 2006 WL 6829886, at *2 (M.D. Fla. Apr. 5, 2006) (finding fraudulent intent based solely on fact that defendant purchased an annuity after being sued and had never previously set aside any money for retirement); *In re Gefen*, 35 B.R. 368 (Bankr. S.D. Fla. 1984) (finding a fraudulent transfer, solely on the basis that the debtor, aware of pending litigation, transferred assets that could have been used to satisfy the judgment).[13]

Another badge of fraud is present where the "transfer occurred shortly before or shortly after a substantial debt was incurred." Fla. Stat. § 726.105(2)(j). As alleged, Innoprise transferred its assets to Harris "[o]n or about April 29, 2011," Compl. ¶ 37, just five months after "SunGard P.S. commenced this action on December 6, 2010," *id.* ¶ 90, two weeks after "SunGard P.S.'s Amended Complaint was filed on April 15, 2011," asserting a claim for copyright infringement, based on documentary evidence obtained through third-party discovery in this case, *id.* ¶ 93, and "[j]ust four days after the deadline to add parties," ¶ 95.

It is a badge of fraud, as well, where the debtor "became insolvent shortly after the transfer was made." Fla. Stat. § 726.105(2)(i); *see Cadle Co. v. Schultz*, 779 F. Supp. 392, 401 (N.D. Tex. 1991) (holding allegations of a scheme to transfer assets into "judgment-proof accounts" and "to other people" sufficient to plead a claim under the UFTA). Again, as alleged, the proceeds from the sale of Innoprise's assets were disbursed to entities other

---

[13]  *See* Compl. ¶ 99 ("The acquisition was entered into by and among all Defendants with full knowledge of SunGard P.S.'s pending claims and lawsuit against Innoprise.").

than Innoprise, "leaving Innoprise without sufficient funds to satisfy a judgment against it" and "judgment proof." Compl. ¶¶ 103, 105, 108.

It is yet another badge of fraud where the debtor's transfer was not "disclosed" to the creditor. Fla. Stat. § 726.105(2)(c). As alleged, "Innoprise never disclosed the acquisition. SunGard P.S. learned of it through the press." Compl. ¶ 38. Crusader Investments' Motion refers to the fact that "the transfer was disclosed in a press release." Motion to Dismiss, 5. But the relevant disclosure, with respect to this alleged badge of fraud under the UFTA, is disclosure to SunGard P.S., the creditor. Thus, courts have found this badge of fraud present where the transfer was not disclosed *to the plaintiff*. *See In re Dealers Agency Servs., Inc.*, 380 B.R. 608, 615-16 (Bankr. M.D. Fla. 2007) ("The transfer was not disclosed to all of the Debtor's creditors . . . neither the Debtor nor [the transferee] notified [the plaintiff] of the transfer, even though [the plaintiff's] lawsuit had been pending against the Debtor."). The presence of these five badges of fraud "leads inescapably to the conclusion" that Innoprise possessed the necessary intent, under the UFTA, and "gives rise to a rebuttable inference of fraud." *In re Ingersoll*, 124 B.R. at 116; *In re Tai*, 1996 WL 529411, at *4.

Otherwise, Crusader Investments baldly states, without any elaboration, that the APA "directly refutes" SunGard P.S.'s allegations that Crusader Investments agreed to accept proceeds from the sale of Innoprise's assets. Motion to Dismiss, 5. This assertion has no basis whatsoever. No basis is or can be identified by Crusader Investments. *See* APA (ECF No. 54-1) at 51; Motion to Dismiss (ECF No. 54) at 12, n.5 ("In fact, prior to closing, the 'Seller' (Innoprise) instructed Harris to remit the purchase price to Defendants Crusader Investments LLC and Harward Investments, Inc."); Ex. A ("The proceeds will go to Harward

Investments and to Crusader. . . . Crusader Investments and Harward Investments are the beneficiaries of the Initial Payment and the Holdback. . . . [T]he initial payment and the holdback is [sic] only going to two parties, Crusader Investments and Harward Investments.").

The factual allegations in the Complaint—which must be taken as true—are plainly sufficient to plead the requisite element of intent and state a "plausible" claim under the UFTA. See *Twombly*, 550 U.S. at 555. Crusader Investments fails to identify any defect in SunGard P.S.'s claim under the UFTA and its Motion to Dismiss Count VI of the Complaint should be denied.

### C. The Complaint states a claim against Crusader Investments for Civil Conspiracy

"The essentials of a complaint for civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cty.*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993).

As alleged, "Defendants, and all of them, conspired to create a scheme whereby Defendants would infringe on SunGard P.S.'s copyright for its NaviLine software and avoid liability for such infringement." Compl. ¶ 110. More specifically, Defendants "agreed that Innoprise's customer contracts would be assigned to Harris, and that Harris would assume Innoprise's obligations thereunder to provide maintenance and support services to Innoprise's former customers for SunGard P.S.'s NaviLine software." *Id.* ¶ 115. And "Defendants, and all of them, knew at the time they entered into the acquisition agreement

that in providing maintenance and support services for SunGard P.S.'s NaviLine software, Harris would be required to infringe SunGard P.S.'s registered copyrights." *Id.* ¶ 119. It is further alleged that "Harris provided maintenance and support services for SunGard P.S.'s NaviLine software in the same manner as Innoprise, as alleged," and "infringed on SunGard P.S.'s exclusive rights with respect to its proprietary NaviLine software and associated source code." *Id.* ¶¶ 52, 54. "Harris's copyright infringement has caused and will continue to cause irreparable harm to SunGard P.S." *Id.* ¶ 56.

As grounds for its Motion to Dismiss, Crusader Investments asserts that "Plaintiff offers no allegation relating to how [it] allegedly participated in a conspiracy to infringe Plaintiff's purported copyright" and "fails to allege how Crusader's allegedly being a party to the asset purchase agreement at issue is an independently unlawful act, as is required." Motion to Dismiss, 6, 8. But "[e]ach co-conspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'" *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (quoting *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) ("The existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence.")).

It is plainly alleged in the Complaint that "Defendants Harris, Harward, Connors, Harward Investments, Crusader Investments and Innoprise agreed that Innoprise's contracts would be assigned to Harris, and that Harris would assume Innoprise's obligations thereunder to provide maintenance and support services to Innoprise's former customers for SunGard P.S.'s NaviLine software." Compl. ¶ 115. Crusader Investments knowingly agreed

DB1/ 68067124.1

to and signed the APA as a party to the conspiracy. *See, e.g., id.* ¶ 119; APA (ECF No. 54-1) at 51. Crusader Investments "assist[ed] in" the scheme, by agreeing to receive, and receiving, the proceeds from the sale. *See id.* ¶¶ 103, 105, 108; Motion to Dismiss (ECF No. 54) at 12, n.5; Ex. A. It is more than plausibly "inferred from the circumstantial evidence" that the diversion of funds away from Innoprise, leaving Innoprise "judgment proof," was essential to the Defendants' agreement. *Donofrio*, 503 So. 2d at 1281; Compl. ¶ 108; *see supra*, Part II(B). And to be liable under SunGard P.S.'s claim for civil conspiracy, Crusader Investments is itself not "required" to have committed "an independently unlawful act," as Crusader Investments contends, without proffering any legal authority in support. Motion to Dismiss, 8. An act done in pursuit of a conspiracy by one conspirator is an act for which each other conspirator is jointly and severally liable. *See, e.g., Nicholson v. Kellin*, 481 So. 2d 931, 935 (Fla. 5th DCA 1985). As pled, Crusader Investments is liable for the alleged "infringing activities of its co-conspirators, with SunGard P.S.'s proprietary NaviLine software and associated source code." *See* Compl. ¶¶ 52, 54.

Crusader Investments' Motion fails to identify any defect in SunGard P.S.'s claim for civil conspiracy, and the Motion to Dismiss, as to Count VII of the Complaint, should be denied. *See Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009) (denying motion to dismiss claim for conspiracy to commit copyright infringement, holding, "[t]he Complaint amply alleges an agreement among Defendants and other co-conspirators to engage in the unlawful infringement . . . that the conspirators took steps to commit these unlawful practices, and that that [the plaintiff] was injured by the conspiracy").

## III. CONCLUSION

For the foregoing reasons, Crusader Investments' Motion to Dismiss the Second Amended Complaint should be denied in its entirety.

Dated: September 15, 2011

                                                       s/Derek E. León
                                                     Derek E. León
                                                     Florida Bar No.: 625507
                                                     dleon@morganlewis.com
                                                     Benjamin Weinberg
                                                     Florida Bar No.: 61519
                                                     bweinberg@morganlewis.com
                                                     Morgan, Lewis & Bockius LLP
                                                     200 South Biscayne Boulevard – Suite 5300
                                                     Miami, Florida 33131-2339
                                                     Telephone:    305.415.3431
                                                     Facsimile:     305.415.3001

                                                     *Attorneys for SunGard Public Sector Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 15, 2011, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will send a notice to all counsel of record:

Dennis Leone, Esq.
SHANKMAN, LEONE & WESTERMAN
609 East Jackson Street – Suite 100
Tampa, Florida 33602

Dawn I. Giebler-Millner, Esq.
Greenberg Traurig, P.A.
450 So. Orange Avenue – Suite 650
Orlando, Florida 32801

s/Derek E. León
Derek E. León
