**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SUNGARD PUBLIC SECTOR, INC.,**
      **Plaintiff,**

-vs-                                            **Case No. 6:10-cv-1815-Orl-28GJK**

**INNOPRISE SOFTWARE, INC., N.**
**HARRIS COMPUTER CORPORATION,**
**HARRIS SYSTEMS USA, INC.,**
**HARWARD INVESTMENTS, INC.,**
**CRUSADER INVESTMENTS, LLC,**
**DENNIS HARWARD, and JOHN**
**CONNORS,**
      **Defendants.**
_____/

# ORDER

Plaintiff, SunGard Public Sector, Inc. ("SunGard"), brings this action, alleging copyright infringement (Count I), tortious interference with advantageous business relationships (Count II), tortious interference with contractual relationships (Count III), violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.201, et seq., Florida Statutes, (Count IV), and unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. §1125(a), (Count V), against Defendants N. Harris Computer Corporation and Harris Systems USA, Inc. (collectively "Harris") and Innoprise Software, Inc. ("Innoprise"). (Second Amended Complaint ("SAC"), Doc. 47). SunGard also alleges violations of the Uniform Fraudulent Transfer Act (Count VI) and civil conspiracy (Count VII) against all Defendants.[1]

---

[1] For purposes of this Order, the term "Defendants" does not include Defendants Dennis Harward or John Connors. They have each filed separate motions to dismiss for lack

Defendants Innoprise, Harris, Harward Investments, Inc. ("Harward Investments"), and Crusader Investments, Inc. ("Crusader") have all moved to dismiss the counts against them for failure to state a claim. (Docs. 54, 55, 57, & 68).[2] As discussed below, Defendants' motions shall be denied.

## I. Motion to Dismiss Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

---

of personal jurisdiction, (Docs. 56 & 67), which will be addressed in a separate Order.

[2] The relevant filings are: Harris's Motion to Dismiss (Doc. 54), SunGard's Response (Doc. 69), and Harris's Reply (Doc. 81); Innoprise's Motion to Dismiss (Doc. 55), SunGard's Response (Doc. 72), and Innoprise's Reply (Doc. 84); Harward Investments' Motion to Dismiss (Doc. 57) and SunGard's Response (Doc. 70); and Crusader's Motion to Dismiss (Doc. 68) and SunGard's Response (Doc. 77).

## II. Background[3]

Prior to 2003, Defendant Dennis Harward ("Harward") was the chief executive officer of H.T.E., Inc. ("H.T.E."), (SAC ¶ 11), which developed software for public-sector organizations such as utility companies and government agencies, (id. ¶ 2). In 2003, non-party SunGard Data Systems, Inc. acquired H.T.E., which then became Plaintiff SunGard. (Id.). SunGard continued to provide software to public-sector organizations, and it also began providing support and maintenance services for its software. (Id. ¶¶ 18-19).

Sometime after 2003, Harward created Innoprise, which developed the same type of software as SunGard, (id. ¶¶ 5, 11), and also provided maintenance and support services for SunGard's software, (id. ¶ 24). In order to "induce" SunGard's customers to enter service agreements with Innoprise rather than SunGard, Innoprise systematically targeted SunGard's customers and told them, among other things, that Innoprise was "taking over" support services for SunGard, which was not true. (Id. ¶¶ 22-24). To provide these support services, Innoprise was required to copy and manipulate SunGard's copyrighted source code. (Id. ¶ 26).

On October 20, 2009, SunGard sent a cease and desist notice to Innoprise, but Innoprise continued the same practices. (Id. ¶¶ 35-36). SunGard filed this suit against Innoprise on December 6, 2010. Thereafter, on April 29, 2011, Innoprise and Harris entered into an Acquisition Purchase Agreement ("APA"), whereby Harris acquired nearly all of Innoprise's assets–including Innoprise's obligations to provide maintenance and support

---

[3] All facts are taken from the Second Amended Complaint (Doc. 47) and are construed as true for purposes of this Order.

services for SunGard's software. (Id. ¶¶ 37, 43). Pursuant to these obligations, Harris accessed, copied, and altered SunGard's copyrighted source code. (Id. at ¶¶ 43-44, 55).

Additionally, the terms of the APA required Harris to remit payment for Innoprise's assets either to Innoprise or to another party as directed by Innoprise. (Id. ¶¶ 103-05). At Innoprise's instruction, Harris remitted payment to Harward Investments and Crusader. (Id.; see also Doc. 70 at 14; Doc. 77 at 14).

### III. Analysis

Defendants assert that these facts fail to state any of the claims alleged in the SAC, and Harris challenges the sufficiency of several claims against it based on successor liability. Each count will be addressed in turn.

#### *A. Count I–Copyright Infringement*

To state a claim for copyright infringement, a plaintiff must allege "first, that he owns a valid copyright in a work and, second, that the defendant copied original elements of that work." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000). Harris asserts that, in addition to these elements, SunGard must also allege by what acts and during what timeframe Defendants infringed the copyrighted materials, citing Magical Mile, Inc. v. Benowitz, 510 F. Supp. 2d 1085 (S.D. Fla. 2007), and Klinger v. Weekly World News, Inc., 747 F. Supp. 1477 (S.D. Fla. 1990), in support. SunGard counters that such a requirement amounts to a heightened pleading standard and was rejected in Klein & Heuchan, Inc. v. Costar Realty Information, Inc., No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130 (M.D. Fla. April 8, 2009). This Court need not decide which pleading standard is correct, however, because SunGard's allegations state a claim for copyright infringement even under the more

strenuous standard.

SunGard provides detailed allegations as to how and when Innoprise allegedly infringed SunGard's copyright, and neither Harris nor Innoprise asserts that these allegations fail to state a claim against Innoprise. SunGard then alleges that "on or about April 29, 2011," Harris acquired Innoprise, (SAC ¶ 37), and that after this acquisition of Innoprise, Harris continued SunGard's infringing conduct–namely, copying and altering SunGard's source code while providing maintenance and support services for SunGard's software, (id. ¶ 43). Thus, SunGard adequately alleges the timeframe of the alleged infringement by Harris and what acts Harris allegedly committed to infringe SunGard's copyright.

In addition, Innoprise and Harris argue that SunGard's claim must be dismissed because Innoprise's and Harris's allegedly infringing activities are allowed under 17 U.S.C. § 117. Section 117 provides in relevant part:

> [I]t is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided . . . that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner[.]

17 U.S.C. § 117(a)(1). This affirmative defense is more commonly referred to as the "essential step" defense. While Harris and Innoprise may ultimately prevail on this affirmative defense, it is not appropriately resolved at this stage in the litigation. The SAC does not describe the alleged maintenance and support activities in detail. And, while it is alleged that the copying and alteration of SunGard's source code was required to perform these services, it is not alleged that these services were required for the utilization of the software. Accordingly, without more, the Court cannot determine whether these services

constitute an "essential step in the utilization of the computer program."  Moreover, even if it were considered an essential step, it is impossible at this stage to determine whether the copies were used "in no other manner" than those permitted by the license agreements. Although Innoprise and Harris are correct that there are no allegations that the copies were used for any other purpose, such allegations are not necessary to plead a prima facie case, and SunGard is not required to negate affirmative defenses in its pleading.

Therefore, SunGard has adequately alleged a prima facie claim for copyright infringement under § 43(a) of the Lanham Act against both Innoprise and Harris, and the issue of Innoprise's and Harris's affirmative defenses under 17 U.S.C. § 117 are premature.

### *B. Successor Liability*

In Counts II, III, IV, and V, the only alleged basis for liability against Harris is as the successor-in-interest to Innoprise.  Harris asserts that it cannot be held liable for any acts of Innoprise committed prior to the APA because under Florida law "[a] corporation that acquires the assets of another business entity does not as a matter of law assume the liabilities of the prior business." Corporate Express Office Prods., Inc. v. Phillips, 847 So. 2d 406, 412 (Fla. 2003). As Harris acknowledges, however, there are several exceptions to this general rule: "'(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.'" Id. (quoting Bernard v. Kee Mfg. Co., 409 So. 2d 1047, 1049 (Fla. 1982)).

As discussed in Section F below, SunGard has stated a claim under the Uniform

Fraudulent Transfer Act, and therefore it has adequately pleded that the transaction was a fraudulent effort to avoid liabilities. Thus, assuming it has stated a claim against Innoprise in Counts II, III, IV and V, SunGard has stated a claim for successor liability against Harris in those counts.

### *C. Counts II and III–Tortious Interference*

In Counts II and III, SunGard asserts that Innoprise tortiously interfered with SunGard's business relationships and contractual relationships.  Under Florida law, the elements of tortious interference are: (1) the existence of a contract or a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional and unjustified procurement of the contractual breach or interference with the business relationship; (4) the absence of justification or privilege; and (5) damage to the plaintiff.  See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (elements of tortious interference with a business relationship); Fernandez v. Haber & Ganguzza, LLP, 30 So. 3d 644, 646 (Fla. 3d DCA 2010) (elements of tortious interference in general); Fla. Tel. Corp. v. Essig, 468 So. 2d 543, 544 (Fla. 5th DCA 1985) (elements of tortious interference with contractual relationship); see also Pilkington v. United Airlines, Inc., 921 F. Supp. 740, 749 (M.D. Fla. 1996) ("Essentially, a claim of tortious interference with a contract and a claim of tortious interference with a business relationship are one in the same. The only practical difference is that in the former there is a contract and in the latter only a business relationship.").

The factual allegations for each of these counts are similar–that by making

misrepresentations that Innoprise was "taking over" support services for SunGard, (SAC ¶¶ 62, 68), Innoprise interfered with, "diverted," and "appropriated" SunGard's business relationships, (id. ¶¶ 61-62), and caused existing customers to breach their contracts with SunGard, (id. ¶ 69). The business relationships alleged by SunGard appear to be ongoing commitments from SunGard customers to utilize SunGard for maintenance and support services, (id. ¶¶ 19, 25, 59), and the contracts are the license agreements between SunGard and its customers for use of SunGard's software, (id. ¶ 67).

In a footnote, Innoprise argues that Count II should be treated as a claim for tortious interference with contractual relationships, not business relationships, because the only business relationships alleged are based in contract. Count II, however, appears to be based on allegedly ongoing business relationships with customers that are not formalized in a contract but still provide SunGard with legal rights. (Id. ¶¶ 19, 25, 59). In any event, even if Count II were construed as based in contract, it states a claim.

Innoprise next argues that Counts II and III do not state a claim because SunGard fails to allege any actual breach of contract or interference with a business relationship. Innoprise reaches this conclusion by arguing that the only allegation that could be an actionable misrepresentation is that Innoprise told SunGard's customers that it was "taking over" SunGard's support services, and SunGard only alleges that this statement was made to two of its customers–the City of The Dalles, Oregon and the City of Waco, Texas. Innoprise further argues that SunGard failed to allege that either of these two customers actually breached a contract or terminated a business relationship with SunGard as a result of this alleged interference. Innoprise's argument is without merit. First, SunGard merely

-8-

mentioned The Dalles and Waco as "examples" of customers to whom Innoprise made these misrepresentations, (SAC ¶ 23), and in its allegations, SunGard clearly indicates that such representations were made to more than just The Dalles and Waco, (id. ¶¶ 20, 59, 61, 67-68). Furthermore, as to Count II, SunGard does assert that Innoprise "intentionally interfered" with and "wrongfully . . . appropriated" SunGard's business relationships with The Dalles, Waco, and other customers.[4] (Id. ¶¶ 59, 61-62). Also, as to Count III, SunGard alleges that Innoprise caused SunGard's customers "to breach their license agreements" by allowing Innoprise access to SunGard's proprietary software. (Id. ¶ 69).

Finally, Innoprise argues that SunGard fails to state a claim in Counts II and III because SunGard does not properly allege damages. Innoprise first continues its previous argument–that because SunGard failed to properly allege breach, it cannot allege damages. However, as noted, SunGard has sufficiently alleged a breach; thus, this argument fails. As to Count III, Innoprise makes two distinct damages arguments. Innoprise first asserts that all of the contracts at issue were terminable upon thirty days' notice and that therefore SunGard could not have incurred damages for its customers terminating their contracts. The alleged breach in Count III, however, is not termination of a contract but allowing Innoprise access to SunGard's proprietary software and source code. This leads to Innoprise's second argument–that the license agreements allowed third parties, such as Innoprise, to access SunGard's source code for maintenance purposes. However, it does not appear that the Court has before it all of the license agreements at issue, and it cannot make such a ruling

---

[4] Additionally, even if this claim is construed as a contractual claim, wrongly appropriating a contract can be construed as wrongly inducing a breach of that contract.

based on the "examples" provided; this issue is more properly addressed at the summary judgment stage. At this point, SunGard alleges that the license agreements do not allow third party access, and therefore SunGard states a claim for tortious interference.

### D. Count IV–FDUTPA

FDUTPA makes it illegal to utilize "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat. "Although not specifically identified in the statute, there are basically three elements that are required to be alleged to establish a claim pursuant to. . . FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).

For purposes of this motion, Innoprise does not challenge the "unfair practice" element. Rather, Innoprise makes the same argument here as it did regarding Counts II and III–that SunGard fails to adequately allege damages because it does not allege that it "lost" The Dalles or Waco as customers. As discussed previously, however, this argument fails.

Innoprise also argues that the other alleged "unfair practice"–"leading [SunGard customers] to believe that Dennis Harward was the former CEO of SunGard [], when in fact, Harward was never employed by SunGard [] in any capacity"–is not properly alleged because SunGard does not specify to which of SunGard's customers Innoprise made such a representation. However, SunGard has provided a list of relevant SunGard customers, (see SAC ¶ 20), and its allegations are sufficient to apprise Innoprise of the nature of SunGard's claims.

### E. Count V–Lanham Act

-10-

"To establish a prima facie case of trademark infringement under § 43(a) [of the Lanham Act], a plaintiff must show '(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010) (quoting Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997)).  Innoprise argues that SunGard merely makes conclusory allegations regarding what acts Innoprise did that would cause confusion.  SunGard, however, alleges that Innoprise made statements that it was "taking over" support services for SunGard, which could cause customers to improperly assume that Innoprise was associated with SunGard.  Accordingly, SunGard has stated a claim under § 43(a) of the Lanham Act.

### F. Count VI–Uniform Fraudulent Transfer Act

After SunGard filed suit against Innoprise, Harris acquired essentially all of Innoprise's assets pursuant to the APA, and the proceeds from the purchase were to be remitted to the Seller–defined as Innoprise–or as otherwise directed in writing by the Seller.  According to SunGard, Innoprise directed Harris to remit payment to Harward Investments and Crusader rather than to Innoprise.  SunGard alleges that both of these transfers, which are essentially two parts of a single transfer, constitute fraudulent transfers.

Florida's version of the Uniform Fraudulent Transfer Act is codified at section 726.101, et seq., Florida Statutes, the relevant portion of which provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor

made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." § 726.105, Fla. Stat.  To state a claim for a fraudulent transfer, SunGard must allege that "(1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due." Nationsbank, N.A. v. Coastal Utils., Inc., 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002).  In determining fraudulent intent, the statute provides several factors that may be given consideration, including whether

> (a) The transfer or obligation was to an insider[;] (b) The debtor retained possession or control of the property transferred after the transfer[;] © The transfer or obligation was disclosed or concealed[;] (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit[;] (e) The transfer was of substantially all the debtor's assets[;] (f) The debtor absconded[;] (g) The debtor removed or concealed assets[;] (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred[;] (I) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred[;] (j) The transfer occurred shortly before or shortly after a substantial debt was incurred[; and] (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 726.105(2), Fla. Stat.  Although these "[b]adges of fraud are not conclusive," and the existence of a single badge of fraud, without more, does not establish fraudulent intent, Tonnelier Constr. Grp. v. Shema, 48 So. 3d 163, 166 (Fla. 1st DCA 2010) (quotation omitted), "[t]he existence of [multiple] badges of fraud create[s] a prima facie case and raise[s] a rebuttable presumption that the transaction is void," Nationsbank, 814 So. 2d at 1230.

Defendants argue that SunGard fails to allege any badges of fraud and that therefore Count VI must fail.  To the contrary, SunGard has pleaded at least three badges of fraud.

SunGard alleges that before the transfer was made, Innoprise had been sued by SunGard; that the transfer was of substantially all of the assets; and that due to Innoprise's instructions to remit payment to Harward Investments and Crusader, Innoprise became insolvent after the transfer. Defendants argue that the fact a suit was pending against Innoprise is insufficient to allege fraudulent intent citing Jacksonville Bulls Football, Ltd. v. Blatt, 535 So. 2d 626 (Fla. 3d DCA 1988). However, Jacksonville Bulls stands for the proposition that the mere fact that a suit is pending *without more* fails establish fraudulent intent, not that it is not factor in the determination of fraudulent intent. And, as discussed, SunGard has alleged multiple badges of fraud–not just that a suit was pending. Accordingly, SunGard states a claim for fraudulent transfer.

### *G. Count VII–Civil Conspiracy*

To state a claim for civil conspiracy, SunGard must allege: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty., 616 So. 2d 562, 565 (Fla. 5th DCA 1993). SunGard alleges that Defendants conspired to "infringe on SunGard['s] copyright . . . and avoid liability for such infringement." (SAC ¶ 110). SunGard alleges that to do this Defendants agreed that Innoprise would access and copy SunGard's copyrighted source code–infringing SunGard's copyright–and then Harris would purchase all of Innoprise's assets and remit the payment to Harward Investments and Crusader, which Harward Investments and Crusader agreed to accept–thereby leaving Innoprise insolvent and "judgment proof."

Defendants argue that because Innoprise is the only one who is alleged to have done an unlawful act–infringing on SunGard's copyright–SunGard has failed to adequately plead a conspiracy. However, "[e]ach coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'" Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (quoting Donofrio v. Matassini, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987)). SunGard has adequately alleged that all Defendants knew of the conspiracy and agreed to assist in accomplishing the object of the conspiracy by either committing the copyright infringement (Innoprise), purchasing Innoprise's assets (Harris), or accepting the funds from Harris in order to leave Innoprise insolvent (Harward Investments and Crusader), and that, as a result of the conspiracy, SunGard was damaged. Therefore, SunGard has stated a claim for civil conspiracy.

## IV. Conclusion

In accordance with the foregoing, the Motions to Dismiss filed by Defendants Harris, Innoprise, Harward Investments, and Crusader (Docs. 54, 55, 57, & 68) are **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida this 2nd day of February, 2012.

Copies furnished to:
Counsel of Record

JOHN ANTOON II
United States District Judge